**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Paul ONO, Defendant–Appellant.**

**No. 89–50138.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1990.

Decided Nov. 23, 1990.

Thomas M. Brown, Van Nuys, Cal., for defendant-appellant.

Jeffrey C. Eglash, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before REINHARDT, LEAVY and RYMER, Circuit Judges.

LEAVY, Circuit Judge:

Paul Ono sought the help of a pharmacologist to manufacture 1–(3–oxy–3 phenylpropyl)–4 phenyl–4–propionoxypiperidine ("OPP/PPP"), a "designer drug" that is chemically similar to synthetic heroin. The pharmacologist became a government informant. Ono was arrested, charged, and

convicted of various offenses, among them conspiracy to manufacture and procuring the manufacture of OPP/PPP in violation of 21 U.S.C. §§ 813, 841(a)(1), and 846. His appeal challenges the admission of a prior conviction for purposes of showing his intent and knowledge in committing these offenses, and the district court's determination of his base offense level for purposes of sentencing. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEEDINGS

In the summer of 1987, Ono sought the help of Yogi Shanmugadhasan ("Shan"), a pharmacologist, to produce OPP/PPP, a substance similar to synthetic heroin. Shan agreed to produce the drug and to instruct Ono how to produce it. In January 1988, Ono and Shan planned to produce 600 kgs. of OPP/PPP. Ono supplied Shan with laboratory materials. Shan then became an informant for the Drug Enforcement Administration ("DEA"). On August 3, 1988, DEA agents arrested Ono in the Los Angeles area, while Shan was midway through the manufacturing process of a batch of OPP/PPP for Ono.

At arrest, the OPP/PPP had not yet been completed. It is undisputed that the precursor chemicals seized at the Los Angeles lab could have yielded sixty to sixty-one grams of OPP/PPP.

The defense at trial was that Ono intended Shan to produce a pesticide for his farm, not OPP/PPP. Ono also maintained he was unaware that Shan was involved in the production of OPP/PPP. The court allowed the jury to hear evidence of Ono's 1981 conviction for possession of heroin with intent to distribute, to rebut Ono's defense that he did not intend to produce OPP/PPP.

The jury convicted Ono of all the counts charged in the indictment. Ono timely appeals.

## DISCUSSION

### I. *Evidence of the 1981 Conviction*

Ono contends that the court abused its discretion by admitting evidence of his 1981 conviction and by failing to explicitly state that the probative value of the evidence outweighed the prejudice to Ono.

### A. *Rule 404(b)*

■ Federal Rule of Evidence 404(b) prohibits the introduction of evidence of prior crimes in order to show character, but allows it "for other purposes, such as proof of ... intent, ... [or] knowledge." We review a district court's decision to allow evidence pursuant to Rule 404(b) for abuse of discretion. *United States v. Faust*, 850 F.2d 575, 584 (9th Cir.1988).

The district court admitted evidence of Ono's 1981 conviction for possession of heroin with intent to distribute as rebuttal evidence to Ono's defense that he did not intend for Shan to manufacture OPP/PPP when he supplied Shan with laboratory materials. In so doing, the district court determined that the prior conviction was probative of Ono's intent and knowledge in committing the present charged offenses.

When the prior act evidence is admitted to show intent, the prior act offered must be similar to the present offense. *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1818, 108 L.Ed.2d 947 (1990).[1] Ono argues that the evidence of his prior conviction for possession with intent to distribute heroin should not be admitted because that offense is not similar to the present charged offense of manufacture of synthetic heroin. Ono cites cases holding that prior convictions for *use-related* offenses are too unlike the *sale* of controlled substances to be admissible to show intent to sell in the present offense. *See Enriquez v. United States*, 314 F.2d 703, 717 (9th Cir.1963) (evidence of prior use of marijuana to show intent to sell heroin in the present offense resulted in unfair trial); *United States v.*

---

**1.** When prior act evidence is admitted to show knowledge, on the other hand, similarity may or may not be necessary depending on the circumstances. *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir.1989). We need not consider this question here, however, as similarity is already required by the admission of Ono's prior conviction to show intent.

*Marques,* 600 F.2d 742, 751 (9th Cir.) (questioning decision to allow evidence of prior purchase of cocaine for personal use to show intent to sell methamphetamine in the present offense), *cert. denied,* 444 U.S. 858, 100 S.Ct. 119, 62 L.Ed.2d 77 (1979).

■ The cases Ono cites do not dispose of the issue before us. Acts related to the personal use of a controlled substance are of a wholly different order than acts involving the distribution of a controlled substance. One activity involves the personal abuse of narcotics, the other the implementation of a commercial activity for profit. The issue in this case does not present that stark difference. The distribution and manufacture of controlled substances are both activities that can be essentially commercial in nature. Both, while differing in their particulars, may be similar in circumstances in which they form part of the same illegal commercial enterprise and share the ultimate quest for profit as a common denominator.

We believe this is such a case. Ono's 1981 conviction involved 220 grams of heroin. This amount is not so insubstantial as to preclude the inference that Ono was involved in a commercial scheme to distribute heroin for profit. Moreover, the specific similarity between the two drugs is substantial. Ono's prior conviction involved a non-synthetic heroin, his present charged offenses involve a synthetic heroin. Under these circumstances, we hold there was a sufficient similarity between Ono's 1981 conviction and his present charged offenses to allow admission of the prior conviction into evidence to show knowledge and intent to manufacture a non-synthetic heroin. The district court did not abuse its discretion in allowing the evidence of the prior conviction.[2]

**B.** *Rule 403*

■ If the evidence of his 1981 conviction is relevant, Ono argues a new trial is required because the district court failed to explicitly balance, on the record, the probative value of the conviction against its prejudicial effect, as required by Federal Rule of Evidence 403.

Ono overstates the requirement that the balancing be on the record. "[A] district court need not mechanically recite Rule 403's requirements before admitting evidence." *United States v. Thomas,* 893 F.2d 1066, 1071 (9th Cir.1990). It is enough that this court can conclude, based on a review of the record, that the district court considered Rule 403's requirements. *Id.*

We have examined the record and conclude that the district court considered the issue of the evidence's probative value against its prejudicial effect. Ono moved to exclude the evidence of the conviction prior to trial. On November 29, 1988, moments prior to beginning the trial, the court heard arguments on the motion. Ono's attorney told the court:

> [T]he issues that the Government is taking saying that the prior conviction would be relevant to, knowledge, intent, still, this does not tend to show knowledge or intent. . . .
>
> It just doesn't go to show the issues that the Government says that it does go to show. It's just not relevant and it would be highly prejudicial. The moment that the jury hears heroin, and this is a case involving synthetic heroin, well, the connection is made, and I feel that any probative value, if any—and I don't think there is any—is vastly outweighed by the prejudicial effect that it would have on Mr. Ono in this case.

Reporter's Transcript, Vol. I, at 1–11. Shortly thereafter, the court denied Ono's motion. *Id.* at 1–13.

■ Although the court did not specifically recite its Rule 403 balancing in denying the motion, we do not see how the court could have failed to consider the issue giv-

---

**2.** We also reject Ono's contention that the 1981 conviction was too remote in time to be admissible. Other cases dealing with similar offenses have admitted evidence of acts much more remote than the one here. *See Ross,* 886 F.2d at 267 (thirteen years); *United States v. Spillone,* 879 F.2d 514, 519 (9th Cir.1989) (seventeen years). Ono was tried in 1988. Considering the degree of similarity involved in this case, the seven year-old conviction was not too remote.

en the argument by Ono's attorney. We do not think it necessary to require a mechanical recitation of Rule 403 to conclude that the district court performed the required balancing where the issue has been clearly put before the court.

Ono refers us to the court's comments on the third day of trial, where the court reaffirmed the admissibility of the conviction and failed to explicitly refer to Rule 403. Because we conclude that the court considered the Rule 403 issue just two days earlier, in reference to the identical issue, we conclude that the court incorporated its Rule 403 balancing when, consistent with its pretrial decision, it again ruled that the evidence was admissible.

## II. *Base Offense Level*

Ono contends the district court misapplied the Sentencing Guidelines in setting his base offense level. We review an application of the Guidelines de novo. *United States v. Pemberton*, 904 F.2d 515, 516 (9th Cir.1990). We review a district court's findings of fact for clear error. *Id.*

■ OPP/PPP, a novel synthetic heroin, is not listed in the Sentencing Guidelines Tables from which a court usually determines a drug defendant's base offense level. The Guidelines specify that if the felony committed is not one expressly covered by the Guidelines, a court should apply the most analogous guideline. United States Sentencing Commission, *Guideline Manual* ("U.S.S.G.") § 2X5.1.[3] Testimony at trial showed that OPP/PPP is a chemical analogue of 1–methyl–4–phenyl–4–propionoxypiperidine ("MPPP"), a Schedule I narcotic. Therefore, the district court calculated the drug equivalent of MPPP under the Drug Equivalency Table in Chapter 2D of the Guidelines. *See* U.S.S.G. § 2D1.1. The table indicated that one gram of MPPP was the equivalent of 0.7 grams of heroin. Multiplying the 61 grams of OPP/PPP involved by the drug equivalency rate of 0.7

for MPPP resulted in a base level of 42.7, yielding an initial base offense level of 20. The district court did not confine itself to this calculation, however, instead it adopted the conclusions of two letters from the DEA to the Sentencing Commission which represented that OPP/PPP is 100 times as potent as MPPP. Applying this multiplier of 100 to the initial base offense level calculation resulted in a finding that 1 gram of OPP/PPP equalled 70 grams of heroin $(1 \times 0.7 \times 100)$ and therefore that the 61 grams of OPP/PPP were equivalent to 4.2 kgs. of heroin $(61 \times 0.7 \times 100)$. The district court thus set Ono's base level at 34, corresponding to a transaction involving more than 3 but less than 10 kgs. of heroin.

Ono argues that the district court erred in arriving at its equivalency determination. Ono agrees that OPP/PPP is an analogue of MPPP, but maintains that OPP/PPP stands at a one-to-one relationship with MPPP as a matter of law. Ono insists this result is required because the Guidelines nowhere authorize the court to enter a multiplying factor to account for the greater potency of OPP/PPP.

We agree. Our review of the manner in which Ono's conduct was made criminal and the indictment under which he was charged and convicted convinces us that the district court erred in accounting for OPP/PPP's greater potency in considering Ono's base offense level.

Ono's conduct was made illegal by Title 21 of the United States Code in the following manner. Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both ..." Section 841(a)(1) sets forth such an offense, providing that it shall be unlawful for any person "[t]o manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance ..." A "controlled substance" is defined as "a drug or other substance, or immediate pre-

---

**3.** We construed U.S.S.G. § 2X5.1 in *United States v. Marsh*, 894 F.2d 1035 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1143, 107 L.Ed.2d 1048 (1990). In *Marsh,* we held that, where the defendants were convicted of manu-

facturing a drug not listed in the Guidelines, the district court may admit expert testimony to determine the most analogous drug listed in the Guidelines, and sentence the defendants on that basis. *Id.* at 1038, 1041 & n. 2.

 

cursor, included in Schedule I, II, III, IV, or V of part B of this subchapter." *Id.* § 802(6). OPP/PPP is not a listed drug included in Schedules I–V of the statute. Section 813, however, provides for the classification of a controlled substance analogue, to the extent intended for human consumption, as a Schedule I controlled substance. A "controlled substance analogue" is defined as a substance "the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II ..." *Id.* § 802(32)(A)(i). A substance may be listed as a scheduled drug either by statute or under Regulations promulgated by the Attorney General. *See id.* § 811(a)(1). MPPP was listed in the Regulations as a schedule I controlled substance. *See* 21 C.F.R. § 1308.11(32) (1987); *see also id.* § 1308.11(37) (1990) (current version).

Ono was indicted of conspiracy to procure and procuring the manufacture of OPP/PPP. Counts One and Two of the indictment allege that OPP/PPP is an analogue drug of MPPP. Evidence was presented by the government that OPP/PPP has a similar chemical structure to MPPP. *See* 21 U.S.C. § 802(32)(A)(i) (1988). Ono was convicted of these counts.

■ We do not believe it to be within the province of the district court then to depart from using MPPP as the appropriate scheduled and listed drug when determining Ono's base offense level. Ono's conduct was made illegal, and he was indicted and convicted, by virtue of the fact that OPP/PPP is a chemical analogue drug of MPPP. MPPP is a listed drug in the Drug Equivalency Tables of the Guidelines. By applying a multiplying factor to account for OPP/PPP's greater potency, the district court disregarded MPPP as the applicable scheduled and listed drug and considered properties of a chemical not listed in the statute, the Regulations, or the Guidelines; that is, a substance having a potency 100 times that of MPPP.[4] This was error, as the district court's task is to compare the synthetic drug to a *listed* drug

under the Guidelines for purposes of determining a defendant's base offense level.

Our holding, of course, only applies to the determination of a defendant's base offense level. We offer no opinion as to whether the potency considerations that concerned the district court could serve as the basis for an upward departure from the sentencing ranges applicable to Ono's offense. *See* U.S.S.G. § 5K2.0 ("[T]he sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating ... circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" (quoting 18 U.S.C. § 3553(b))); *id.* § 2D1.1, Application Note 9 ("Trafficking in controlled substances, compounds, or mixtures of unusually high purity may warrant an upward departure...."). We therefore remand for resentencing.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**4.** If such a substance exists, other than OPP/PPP, it has not been identified.