951 F.2d 364
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas STEVENSON, aka: Steve Evon, Defendant-Appellant.
 No. 89-50443.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submission Deffered May 6, 1991. Submitted Dec.
23, 1991.
Decided Jan. 8, 1992.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Thomas Stevenson pleaded guilty to one count of transporting a stolen vehicle in foreign commerce, and one count of money laundering. See 18 U.S.C. §§ 2, 2312; 18 U.S.C. § 1956(a)(1)(A). Stevenson challenges on four grounds his sentence imposed under the United States Sentencing Guidelines ("U.S.S.G."). We have jurisdiction pursuant to 18 U.S.C. § 3742, and we affirm the district court with respect to Stevenson's first three claims. We refuse to consider Stevenson's final contention since it was not raised below, and is now properly before the district court on collateral review.
 
 FACTS AND PROCEEDINGS BELOW
 
 3
 Counts one through five of the indictment charged Stevenson with transporting stolen vehicles in interstate and foreign commerce. Counts six through nine charged him with money laundering, based on the checks he received and deposited as payment for the stolen cars. Count six described a $16,104 check Stevenson had deposited. Counts seven, eight and nine described checks deposited in the amounts of $10,325, $13,790 and $14,575 respectively. Stevenson pleaded guilty to counts one and six, and the government dismissed the other counts.
 
 
 4
 Stevenson's sentence was calculated as follows. The base offense level for money laundering was determined to be 23. See U.S.S.G. § 2S1.1(a)(1). The stolen vehicles count could not be used to increase the base offense level under the combined offense level provision because the offense level for transporting stolen vehicles is "9 or more levels less serious" than the offense level for money laundering. See U.S.S.G. § 3D1.4(c). Stevenson's base offense level was raised one point, however, pursuant to section 2S1.1(b)(2)(B), because the Probation Report determined that the value of the laundered money was $139,765. This estimate apparently was based on an inference from the total dollar amount of all check payments Stevenson deposited (including checks mentioned in the dismissed counts), and the total dollar value of all stolen cars he transported (including cars mentioned in the dismissed counts and cars not listed in the indictment).[1] Stevenson's base offense level of 24, combined with his criminal history score of 8, mandated a sentence in the 77-96 month range. See U.S.S.G. § 5A, Sentencing Table. The district court sentenced Stevenson to 60 months on count one and to the 96 month maximum on count six. The sentences are to be served concurrently, so Stevenson's total prison term is 96 months. The court also ordered restitution in the amount of $51,104.
 
 STANDARD OF REVIEW
 
 5
 We review de novo the district court's application of the Sentencing Guidelines. United States v. Ono, 918 F.2d 1462, 1466 (9th Cir.1990). We review the court's findings of fact for clear error. Id.
 
 ANALYSIS
 
 6
 * Whether the District Court Erred in Applying the Base
 
 
 7
 Offense Level Provision for Money Laundering
 
 
 8
 The Guidelines require the district court to "[d]etermine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction." U.S.S.G. § 1B1.2(a). See e.g., United States v. Bos, 917 F.2d 1178, 1180-81 (9th Cir.1990).
 
 
 9
 Stevenson asserts that he was engaged primarily in a scheme to fence hot cars, and that his money laundering activities were purely incidental to this offense. Therefore, he claims, he should have been sentenced under section 2B1.1(b)(6), the offense guideline section that covers organized schemes to steal vehicles, instead of under the money laundering provisions of section 2S1.1.
 
 
 10
 The fact remains that Stevenson pleaded guilty to money laundering in addition to pleading guilty to transporting stolen cars. Thus, section 2S1.1 clearly applied. We therefore reject Stevenson's claim.
 
 II
 
 11
 Whether the District Court Erred in Considering the Values
 
 
 12
 From the Dismissed Counts as "Relevant Conduct"
 
 
 13
 Stevenson claims the district court erred in considering the dollar values expressed in the dismissed counts in computing his base offense level for money laundering. We disagree.
 
 
 14
 Section 1B1.3(a)(2) of the Guidelines, covering "Relevant Conduct" where the offenses involved "would require grouping of multiple counts," directs the sentencing judge to include in the base offense level calculation "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The Commentary provides: "Application of this provision does not require the defendant, in fact, to have been convicted of multiple counts." U.S.S.G. § 1B1.3, Application Note 2.
 
 
 15
 In the present case, the district court found that the evidence from the dismissed counts concerning other checks and other stolen cars constituted relevant conduct for purposes of estimating the amount of money laundered under section 2S1.1(b)(2):
 
 
 16
 THE COURT: Well, as was previously indicated by the court, this defendant was charged with multiple offenses, and every one of them was a multiple--every one of them was a separate offense, that they were interrelated. There wasn't the slightest doubt at all, and that you could fairly characterize overall the kind of enterprise in which he was engaged was an international scheme to steal automobiles and turn them into money.
 
 
 17
 ER 13 at 27.
 
 
 18
 Stevenson argues "relevant conduct" means conduct underlying convictions, and that conduct related to dismissed charges may not be considered for purposes of base offense level calculation under section 1B1.3. We have rejected this line of reasoning. See United States v. Willard, 919 F.2d 606, 610 (9th Cir.1990), cert. denied, 112 S.Ct. 208 (1991) (under section 1B1.3(a)(2), "the court properly looked to all of the offense conduct, not just the crime of conviction.").
 
 
 19
 We noted in United States v. Restrepo, No. 88-3207, slip op. 13869 (9th Cir. Oct. 4, 1991), that the conduct considered at sentencing must be " 'an ingredient of the offense charged' " to be part of the "same course of conduct or common scheme or plan." Restrepo, slip op. at 13883 n. 11 (quoting Specht v. Patterson, 386 U.S. 605, 608 (1967)).[2] Restrepo recognized that if the district court's finding on a sentencing factor will drastically effect the term of the sentence, it requires more proof than merely a preponderance of the evidence. Restrepo, slip op. at 13883, 13884 n. 12.[3]
 
 
 20
 The district court's finding, applying a preponderance of the evidence standard, Id. at 13885, sufficiently demonstrates "relevant conduct." The conduct relating to the dismissed charges is identical to the convictions on which Stevenson was sentenced. We hold Stevenson's claim lacks merit.
 
 III
 
 21
 Whether the $139,765 Figure is Clearly Erroneous
 
 
 22
 Stevenson asserts the district court erred in increasing his base offense level by one point under section 2S1.1(b)(2)(B), because there was no evidence supporting its finding that he had laundered more than $100,000.
 
 
 23
 The government argues that, not only did Stevenson fail to object to the $139,765 estimate at sentencing, but he assured the district court that he had no quarrel with the facts in the probation report, in which that figure appears twice. At the outset of the sentencing hearing, Stevenson's attorney stated: "I accept the probation statement of the facts." ER 13 at 21. It is relatively clear, however, that defense counsel was only accepting facts pertaining to a separate issue raised at sentencing. Later in the hearing, defense counsel explicitly challenged the $139,765 estimate. ER 13 at 31. The colloquy that follows indicates there was some confusion over the difference between the dollar amount used in calculating the base offense level, and the dollar amount of the restitution fine:
 
 
 24
 MR. PRICE [Defense Counsel]: I guess I have one lingering bit of confusion, that's on the specific offense characteristics. I noticed in the letter [from probations] of March 13, the monetary loss was stated as $51,104, and in the initial presentence report, the monetary loss was stated as $139,000.
 
 
 25
 May I ask the court which figure the court used?
 
 
 26
 THE COURT: The probation officer suggested the lesser amount upon inquiry as the correct amount; this is not?
 
 
 27
 MR. GIBBONS [Prosecutor]: If I could just have a moment, your honor.
 
 
 28
 THE COURT: Sure.
 
 
 29
 MR. GIBBONS: I'm confused becuase of Mr.--in defense counsel's papers, they said they had no objection. In fact, they almost admitted that the $139,000 figure was correct. I haven't compared to where that figure came from.... ER 13 at 31.
 
 
 30
 MR. GIBBONS: ... The relevant conduct in the case was originally brought out in the presentence report, and that involves a fraud scheme, money laundering scheme that involved about $139,000.
 
 
 31
 I think what the probation department was originally doing in their presentence report was discussing the overall money laundering amount, and then trying to apprise the court as to that amount actually lost by the bank. And there are two different amounts.
 
 
 32
 THE COURT: Well, all right. I'm going to make a restitution order but it will be with respect only to the $51,104.
 
 
 33
 MR. PRICE: [Attempting here to convince the court to use the $51,104 restitution figure in calculating the relevant conduct for the base offense level]. Your honor, that [$51,104 figure] will bring the guideline down to 22 instead of going up to 24, because between--under the specific event characteristic--
 
 
 34
 THE COURT: That's right. It has to be over--
 
 
 35
 MR. PRICE: --there's no increase.
 
 THE COURT: --$100,000
 
 36
 MR. PRICE: That's correct. There's no increase and I guess it will remain--
 
 
 37
 THE COURT: No, I don't think the amount ordered by way of restitution is what controls the offense level. It's the amount that is disclosed as having been taken, so the court's going to stand by its previous ruling.
 
 
 38
 MR. PRICE: Well, at this point, I submit to the court, it's not clear.
 
 
 39
 THE COURT: It's not what?
 
 
 40
 MR. PRICE: It's not clear as to the amount taken now. This is the first time I've seen the letter of 3/13, but I would submit to the court that it's not clear at this point what was taken.
 
 
 41
 THE COURT: It is clear to the court. It's clear to the court that that which ought to be ordered restitution is only part of that which the record establishes was taken totally. ER 13 at 33-34.
 
 
 42
 These passages demonstrate unmistakably that Stevenson objected to the court's finding that the money laundering scheme involved $139,765, though his objection was not very specific. We now turn to the merits of Stevenson's claim.
 
 
 43
 Stevenson claims that there was no evidence supporting the court's finding that the scheme involved $139,765, and that the calculation was clearly erroneous. He notes first that the total value of the checks mentioned in count six and in the dismissed counts (seven through nine) was only $54,794. He then raises a somewhat modified version of his earlier argument, contending the court could not consider the total value of the stolen cars to estimate what other funds must have been laundered in addition to the funds evidenced by the recovered checks.
 
 
 44
 We reject Stevenson's last argument. The district court appropriately considered the total value of the ten stolen cars in estimating the amount of money laundered.
 
 
 45
 Furthermore, Stevenson does not demonstrate the court's estimate of $139,765 is clearly erroneous. His theory that this figure was arrived at by "double counting"[4] finds no support in the record. As the government observes, Stevenson himself related to the probation officer that "about $200,000 was realized from the stolen car ring." ER 9 at 4. We hold that the district court had a sound basis for its estimate, and that its decision was not clearly erroneous.
 
 IV
 
 46
 Whether the District Court Erred in Computing Stevenson's
 
 Criminal History Score
 
 47
 The Sentencing Guidelines advise that "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history." U.S.S.G. § 4A1.2(a)(2). The Commentary to this section states that "[c]ases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, Application Note 3. See e.g. United States v. Davis, 922 F.2d 1385, 1388 (9th Cir.1991).
 
 
 48
 In computing Stevenson's criminal history score, the district court treated as unrelated his Oregon convictions for first degree theft and attempted theft. Stevenson contends the two convictions "arose from the same act" or "arose from a common scheme or plan." Blue Brief at 10-11. The government, on the other hand, asserts the crimes were committed in different places and were prosecuted separately. Red Brief at 15.
 
 
 49
 In papers filed in advance of sentencing, Stevenson's defense counsel stated: "The defendant takes no exception to the Probation Office's computation of his criminal history category." Red Brief at 15. Both parties agree that Stevenson did not object to the district court's decision to treat his prior convictions as unrelated; indeed, he explicitly accepted that finding. Having failed to raise this issue in the district court, Stevenson filed a petition for a writ of habeas corpus challenging his criminal history score. ER 11. Despite Stevenson's failure to object at sentencing, and his subsequent filing of a habeas corpus petition, the parties wish us to review Stevenson's claim, the government asking that we apply the plain error standard. We decline to address this matter, however, since it is now properly before the district court on collateral review.
 
 AFFIRMED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Probation Report discusses this calculation in two places, though not with great clarity:
 According to the AUSA in the Western District of Washington, the total amount of the fraud scheme involved $139,765 (for the ten automobiles) although only five automobiles are mentioned in the Indictment. ER 8 at 5.
 Specific Offense Characteristics: Section 2S1.1(b)(2)(B) provides for an increase if the value exceeded $100,000, and in this case the value of all relevant conduct was approximately $139,765, which warrants a one level increase. ER 8 at 8.
 
 
 [2]
 In Specht, a conviction was used as the basis for commencing a proceeding under a state sexual offender recidivist statute. Specht, 386 U.S. at 328-29. In the subsequent proceeding, the defendant was not provided with notice and a full hearing. Id. at 328. Because the second proceeding required new findings of fact, the issues presented were distinct and required adherence to procedural protections. Id. at 329-30
 
 
 [3]
 Restrepo references United States v. Kikumura, 918 F.2d 1084, 1101 (3d Cir.1990) (sentence departure from 30 months to 30 years), as an example of an unacceptable result. Restrepo, slip op. at 13884 n. 12
 
 
 [4]
 Stevenson claims the probation officer must have added the total value of the cars to the total value of the checks, instead of merely using the car values as a proxy to estimate the amount of money laundered. Gray Brief at 2. Such a technique could lead to double counting where the value of a particular car and the check payment for that car are both factored into the equation. There is no evidence in the record, however, indicating the probation officer used this method