972 F.2d 1345
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Haydn HUGHES, Defendant-Appellant
 No. 91-10251.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1992.*
Decided July 22, 1992.
 
 Before WALLACE, CHOY and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Haydn Hughes appeals from his conviction on two counts of using of false statements in immigration matters, in violation of 18 U.S.C. § 1546(b)(3). The counts alleged that Hughes used false attestations on Employment Eligibility Verification (Form I-9), by asserting that he was a citizen or national of the United States. Hughes contends that the district court erred in admitting evidence of his false claims of United States citizenship and birth in San Antonio, Texas made in an application for food stamps because it constituted inadmissible character evidence under Federal Rule of Evidence 404(b), was not relevant, and its probative value substantially was outweighed by unfair prejudice. Finding that the district court did not err in admitting the evidence for a limited purpose, we affirm.
 
 
 3
 Hughes applied for jobs at the Brown Derby Restaurant in Scottsdale, Arizona and at the Scottsdale Hilton on September 20th and October 6, 1990 respectively. As verification of his eligibility for employment, in both instances he completed an Employee Eligibility Form (I-9 Form) containing an attestation, under penalty of perjury, that he was a citizen of the United States.
 
 
 4
 At the trial Hughes testified that he was born in North Wales and had a British Passport. He also testified that, at the time he completed the I-9 Forms at issue in this case, he honestly believed that he was a United States citizen and that he had acquired citizenship on the basis of the length of time he had been in the country, because he married a United States citizen, and because he had paid taxes for a number of years. Hughes also stated that he did not apply for amnesty under the Amnesty Program because he assumed that he was a United States citizen.
 
 
 5
 On cross-examination the government sought to question Hughes about two forms he had completed and filed with the state of Arizona in connection with an application for food stamps. These forms apparently were completed in July and August 1990, shortly before the I-9 Forms at issue here. In them Hughes claimed that he was a United States citizen and that he was born in San Antonio, Texas. The food stamp documentation formed the basis of a third count of the indictment in which the government charged Hughes with false representation of citizenship in an Initial Interstate Claim submitted to the Arizona Department of Economic Security, in violation of 18 U.S.C. § 911. Before trial commenced, the district court granted the government's motion to dismiss this count.
 
 
 6
 Defense counsel twice objected to this line of questioning on the ground that it was not relevant because it related to the dismissed count. The court overruled the objections and ruled that the evidence was admissible, but only to impeach Hughes's credibility and "state of mind."
 
 
 7
 Hughes's initial claim that the district court admitted evidence of his food stamp application for the prohibited purpose of showing that he has a propensity falsely to attest to United States citizenship and that he therefore, was likely to have done so on these I-9 Forms simply has no basis in fact. Fed.R.Evid. 404(b). In ruling on defense counsel's objections, as well as during both cross and redirect examinations, Judge McNamee specifically stated and reiterated that the testimony regarding the food stamp application and the food stamp documents themselves were admissible solely for the narrowly circumscribed purpose of impeaching Hughes's "credibility" by attacking his claimed "state of mind" at the time he completed the I-9 Forms.[1] Thus, Hughes cannot plausibly argue that the district court erred in impermissibly admitting this evidence under the first part of Rule 404(b).
 
 
 8
 Evidence of other acts is admissible under Rule 404(b), however, whenever it is relevant to an issue other than the defendant's criminal propensity. United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir.1985); United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982). Hughes contends that the district court erred in admitting the evidence on this ground to show his "state of mind" because the government neither demonstrated that the evidence tended to prove (or disprove) a material element or issue in the case, i.e. its relevance, nor did it establish that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. United States v. Kindred, 931 F.2d 609, 612-13 (9th Cir.1991); Mehrmanesh, 689 F.2d at 830. These contentions also lack merit.
 
 
 9
 Hughes's defense at trial was that he did not have the requisite knowledge that the attestation was false when he completed the I-9 Forms because he honestly believed he was a United States citizen by virtue of his lengthy residence in the country, marriage to a United States citizen, and by paying taxes. The fact that, less than two months before completing the I-9 Forms, Hughes filed an application for food stamps in which he claimed that he was a United States citizen born in San Antonio, Texas certainly could, in the eyes of the jury, tend to make less likely his claimed honest belief on direct examination that he truly believed that he was a citizen for the reasons he testified to on cross-examination. Fed.R.Evid. 401.
 
 
 10
 Nor did the district court err in determining that the probative value of this evidence was not substantially outweighed by unfair prejudice. Fed.R.Evid. 403. A district court is not required to recite mechanically Rule 403's requirements before admitting evidence; it is enough if we can conclude from a review of the record that the district court considered that rule's requirements. United States v. Ono, 918 F.2d 1462, 1465 (9th Cir.1990); United States v. Thomas, 893 F.2d 1066, 1071 (9th Cir.), cert. denied, 111 S.Ct. 80 (1990).
 
 
 11
 Before trial Hughes filed a motion in limine arguing for exclusion of this evidence under Rules 404(b) and 403 and the court held a hearing at which the motion was discussed. Although the district court declined to rule on the motion until trial and Rule 403 was not specifically raised either by Hughes or the court at the hearing, it is difficult to believe that Judge McNamee did not consider the issue after receiving (and presumably reading) Hughes's motion on the subject, by holding a hearing on the motion's merit, and conducting numerous bench conferences on the question of admissibility during the course of the trial. See Ono, 918 F.2d at 1465; Thomas, 893 F.2d at 1071. Moreover, the district court here adequately "demonstrat[ed] ... [its] sensitivity to the potential for unfair prejudice" in other ways. Id. The court gave the jury careful limiting instructions when it initially admitted into evidence Hughes's testimony regarding the food stamp application and the food stamp documents, and in the jury instructions again cautioned the jurors on the limited purposes for which evidence of other acts had been offered during the trial. Id.; United States v. Bailleaux, 685 F.2d 1105, 1112 (9th Cir.1982). In addition to these instructions, the court ordered the government to redact those portions of the food stamp documents that were not pertinent to limited purposes for which they were admitted.
 
 
 12
 Finally, Hughes urges that the district court abused its discretion by impermissibly limiting defense counsel's redirect examination of him regarding his motivation for claiming he was born in San Antonio on the food stamp documents. Hughes's argument, however, mischaracterizes the court's statements which in no way limited such questioning. Contrary to Hughes's assertions, the court's statements to defense counsel were neither rulings that prohibited his intended redirect examination, nor were they "threats" regarding the consequences should he pursue his questioning. Rather, Judge McNamee's statements were words of caution that the judge himself characterized as "suggestions" and which, as Hughes admits on appeal, merely were attempts to dissuade Hughes's attorney from questioning him in a manner that would "open Pandora's box" by eliciting testimony that might lead to his admission of an additional crime. Such suggestions cannot reasonably be construed to be as rulings that unduly restricted defense counsel's redirect examination and, as such, they did not constitute an abuse of discretion.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Hughes's reliance on United States v. Powell, 587 F.2d 443 (9th Cir.1978) entirely is misplaced. In Powell the court denied admission of defendant's prior convictions which the prosecution sought to introduce in an effort to prove a common scheme, plan, system or design under Rule 404(b). Hughes argues that the food stamps documents are irrelevant to the charged counts because they, like those in Powell, do not prove any common scheme, plan, or design. While Hughes is correct in this assertion, his revelation is entirely irrelevant because the evidence was not admitted by the trial court because it proved a common plan, scheme, or design. Rather, the pertinent question is if the district court properly admitted the evidence to impeach Hughes's claimed state of mind