15 F.3d 1095
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Roy WEISS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oucho SAELEE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lai Chiem SAELEE, Defendant-Appellant.
 Nos. 92-30493, 93-30051 and 93-30052.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 13, 1993.
Decided Jan. 11, 1994.
 
 1
 Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges
 
 
 2
 Memorandum*
 
 
 3
 Roy Weiss, Oucho Saelee, and Lai Chiem Saelee appeal their jury convictions and sentences. All three were convicted of importing opium, conspiring to possess opium with intent to distribute it, and possessing opium with intent to distribute it. Weiss and Lai Chiem Saelee were also convicted of conspiring to import opium. We affirm.
 
 
 4
 * Weiss and Lai Chiem Saelee argue that the evidence was insufficient to sustain the jury's verdict. We must reject an insufficiency claim unless the evidence is such that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 5
 Weiss and Lai Chiem Saelee fail to meet that standard here. They contend that the evidence was insufficient because the case against them was premised largely on testimony of Then-Sing Saelee, an accomplice who admitted to lying about her role in previous opium importations. Although defendants concede that perjurers and accomplices may testify in a criminal trial, they contend that the testimony Then-Sing Saelee gave was incredible on its face. Although they point to several instances in which Then-Sing Saelee lied--both before and during the trial--they fail to elaborate on just what it was about her statements against the defendants that require a rational juror to reject her testimony. Indeed, the district court gave a special credibility instruction, and the jury was accordingly well aware of the special credibility problems that Then-Sing Saelee presented.
 
 
 6
 Moreover, a statement Weiss gave after his arrest, and a recorded conversation from jail between Then-Sing Saelee and Lai Chiem Saelee, were introduced into evidence and served to corroborate part of Then-Sing Saelee's testimony. Accordingly, defendants' insufficiency arguments fail.[1]
 
 II
 
 7
 Appellants argue that the district court erred in denying their motion to suppress the opium seized in Weiss' house. They contend that Customs Service agents violated 18 U.S.C. Sec. 3109, the "knock and announce" statute, in entering Weiss' home to execute a search warrant.
 
 
 8
 * We first consider who has standing to contest a violation of Sec. 3109. In order to have standing to challenge a police entry into a home, an individual must show that he or she had a personal interest that has been infringed by the forced entry. See United States v. Lockett, 919 F.2d 585, 587 (9th Cir.1990). He or she must "demonstrate that [his or her] own expectations of privacy or property interests were violated by the challenged police conduct." United States v. Lingenfelter, 997 F.2d 632, 636 (9th Cir.1993).
 
 
 9
 Oucho and Lai Chiem Saelee argue that they have standing to object to the violation of the knock and announce statute for two reasons. First, they note that they paid Weiss' rent. That, however, does not give them a reasonable expectation of privacy in Weiss' residence, for they had no right to enter it at will and exclude others. See Rakas v. Illinois, 439 U.S. 128, 149 (1978). Second, they claim that they were co-owners of the opium. That too is insufficient to give them standing. Rawlings v. Kentucky, 448 U.S. 98, 105-06 (1980) ("arcane" concepts of property law do not control issues of standing to object to a search; only question is whether police violated legitimate expectation of privacy). Thus only Weiss may challenge the agents' entry into his home.
 
 B
 
 10
 This court has held that "exigent circumstances may excuse failure to wait for the occupant to refuse entry, but absent exigency, there must be explicit refusal or a lapse of a significant amount of time before officers may forcibly enter the premises." United States v. Mendonsa, 989 F.2d 366, 370 (9th Cir.1993). Weiss contends not only that the amount of time the agents waited was insufficient, but also that no exigent circumstances were present to excuse the violation of the statute's requirements. Suppression of the seized opium is appropriate as a result, he argues.
 
 
 11
 We review the district court's conclusion that exigent circumstances were present de novo. United States v. McConney, 728 F.2d 1195, 1205 (9th Cir.), cert. denied, 469 U.S. 824 (1984). At the time of the entry, the agents knew (1) that Weiss had been arrested at the site of a marijuana cultivation operation and that weapons had been seized during a search of that location; (2) that there was an outstanding warrant for Weiss' arrest for failure to appear on a charge of possessing a concealed weapon; and (3) that the agents noticed during surveillance of Weiss' home that someone peered three times from the front window.
 
 
 12
 We conclude from these facts that the agents' belief that they might be in danger was reasonable. United States v. Mendonsa, 989 F.2d 366 (9th Cir.1993), on which Weiss relies, does not preclude us from concluding that exigent circumstances existed. In Mendonsa, the government based its claim of exigency on (1) the premise that arresting drug dealers is inherently dangerous, (2) the fact that the defendant had a prior conviction for armed robbery, and (3) the fact that officers heard noises, including soft music, when they knocked. Our court rejected the government's claim not because a prior conviction for armed robbery could not support the existence of probable cause, but rather because there was little indication that the defendant was involved in drug activity. Id. at 371. Here, by contrast, the agents knew to a certainty that Weiss had just received commercial quantities of opium. This knowledge, combined with the fact that Weiss was likely to possess a weapon, was sufficient to justify the entry.
 
 III
 
 13
 * Oucho and Lai Chiem Saelee argue that the district court erred in denying their motions to suppress their post-arrest statements. We note at the outset that the government introduced only Lai Chiem Saelee's statement at trial. Since Oucho Saelee introduced his own statement, the district court's decision not to suppress did not prejudice him, and he is not entitled to relief.
 
 
 14
 A post-arrest statement must be suppressed if it is the fruit of an unlawful arrest. A warrantless arrest may be made only if there is probable cause to believe that the accused had committed or was committing an offense. United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th Cir.1988). We review de novo whether there is probable cause for a warrantless arrest. Id. at 1295.
 
 
 15
 The district court concluded that it was "absolutely clear" that the police had probable cause to arrest Oucho and Lai Chiem. It found that the people inside the Saelee's red van "were associated with the people in the Weiss residence, were involved in this drug transaction and were the people that were being referred to by [Then-Sing Saelee] when she was describing to the agents the fact that there were others in the vicinity."
 
 
 16
 The district court's conclusion that probable cause existed is correct. Then-Sing Saelee indicated to Weiss, in a conversation that the agents recorded after Weiss agreed to cooperate, that others would be meeting her to pick up the opium. Subsequently, the agents saw Then-Sing meet Oucho and Lai Chiem Saelee in a parking lot on her way to Weiss' house. These facts supplied the agents with probable cause, and it was not error to deny Lai Chiem Saelee's suppression motion as a result.
 
 B
 
 17
 After his arrest, Oucho Saelee produced a small piece of paper, with Roy Weiss' address written on it, from his pocket. He also signed a written consent to search his home. When agents searched the Saelee home, they found a small vial of opium, containing 3.5 grams, that belonged to Oucho's father. The evidence was introduced at trial.
 
 
 18
 Lai Chiem and Oucho Saelee argue that the piece of paper and the 3.5 grams of opium should have been suppressed because (1) Oucho did not produce the slip of paper voluntarily and his consent to the search of his home was coerced and (2) the 3.5 grams of opium were irrelevant and more prejudicial than probative.
 
 
 19
 We conclude that the district court did not err in failing to suppress either the slip of paper or the opium found in the Saelee's home. The district court found that a Customs agent, while patting Mr. Saelee down, told Mr. Saelee not to move or he would "break [his] neck." The court found that this threat was made to get Mr. Saelee's attention because Oucho would not stand still. The court also noted that Mr. Saelee was given Miranda warnings before he produced the scrap of paper with Weiss' address and consented to the search of his home. We hold that, in light of these factors, the district court properly denied the Saelee's motions to suppress.
 
 
 20
 Nor did the district court err in permitting the government to introduce the 3.5 grams of opium found in the Saelee's home. Oucho Saelee argues that the opium should have been excluded under Federal Rules of Evidence 401 and 403 because it belonged to Chiem Cho, his father, and was thus irrelevant to determining whether Oucho Saelee was involved in the importation and distribution of the opium sent to Weiss' home. Although Chiem Cho told agents that the opium was his, the jury was free not to believe his statements--especially in light of the fact that Chiem Cho also claimed that the opium was ten years old, while a Customs agent testified that it was fresh. Further, the opium found in the Saelee home was probative of Mr. Saelee's knowledge.
 
 IV
 
 21
 Count I of the defendants' indictment charged them with conspiring to import opium, in violation of 21 U.S.C. Sec. 963. Count 3 charged them with conspiring to possess opium with intent to distribute it, in violation of 21 U.S.C. Sec. 846. Appellants Oucho and Lai Chiem Saelee argue that these counts are multiplicitous. We reject their claim. The Supreme Court has explicitly held that it is permissible to impose separate punishment for violations of these two different statutes. Albernaz v. United States, 450 U.S. 333 (1981).
 
 V
 
 22
 * Weiss argues that the district court abused its discretion in denying his Rule 14 motion to sever. He contends that he suffered undue prejudice as a result because he was unable to introduce evidence that Oucho and Lai Chiem had received twelve prior shipments of opium. The district court ruled that such evidence could not be admitted because it was unduly prejudicial to the Saelee defendants.
 
 
 23
 Weiss argues that evidence of the prior drug shipments would have helped to show that he was an innocent dupe of Oucho, Lai Chiem, and Then-Sing Saelee, whose past attempts to import opium had been unsuccessful. We hold that the district court did not abuse its discretion in denying Weiss' motion for a separate trial. Evidence of the Saelees' past involvement in drug importation alone would not have supported Weiss' defense. Such evidence merely would have shown the Saelee's propensity to import opium. It would not have tended to prove or disprove that Weiss lacked knowledge that he was part of a scheme to import opium.
 
 B
 
 24
 Oucho argues that he was prejudiced by being tried together with Lai Chiem and Weiss because the bulk of the evidence introduced at trial concerned his two co-defendants. As a result, he claims that the jury may have erroneously concluded that he was guilty based on evidence relating to his co-defendants or by virtue of the fact that he is married to Lai Chiem.
 
 
 25
 The district court gave the jury a limiting instruction, telling it to consider each charge against each defendant separately. In Zafiro v. United States, 113 S.Ct. 933 (1993), the Supreme Court stated that severance should be granted only "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 938. Further, the court noted that measures less drastic than separate trials, such as limiting instructions, will often suffice to minimize the possibility of prejudice. Id. We hold that the district court's limiting instructions were adequate here.
 
 VI
 
 26
 The District Court admitted testimony from Seng Finh, a man who testified that Lai Chiem Saelee had twice sold him opium in 1990. The two Saelee appellants argue that the district court abused its discretion in doing so, and that it should have granted their motion in limine to exclude all evidence of Lai Chiem's prior drug sales.
 
 
 27
 Evidence of other crimes or acts is admissible under Rule 404(b) "except where it tends to prove only criminal disposition." United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir.1991) (internal quotation and citation omitted). We apply a four part test to determine if the evidence was properly admitted under Rule 404(b): (1) there must be sufficient evidence to show that the defendant committed the prior acts; (2) the acts must tend to prove a material issue in the case; (3) the other acts must not be too remote in time; (4) the other crimes must be similar to the crime charged. United States v. Arambula-Ruiz, 987 F.2d 599, 602-03 (9th Cir.1993).
 
 
 28
 Each of these prongs was met in this case: (1) the witness' testimony was sufficiently detailed to establish that Lai Chiem Saelee had previously sold opium; (2) the act tended to prove Ms. Saelee's intent to distribute the opium, and intent is a material element of what the government had to prove; it also tended to show Ms. Saelee's knowledge, which is a material element of the offenses for which she was charged as well; (3) the drug sales took place about two years prior to the acts for which Ms. Saelee stood trial, which is not too remote. See Id. at 603 (noting that this circuit has held that five years is not too remote); (4) the other crimes to which the witness testified are similar to the ones for which Ms. Saelee was charged.
 
 
 29
 In addition to these four requirements, it is necessary to weigh the probative value of the evidence in question against its prejudicial effect, under Rule 403. Id. at 602. Although the district court did not perform this balancing explicitly, it stated before denying the motion in limine that it had read the parties' briefs and did not need oral argument.
 
 
 30
 The defendants argue that this failure to state balancing factors on the record constitutes error and requires a new trial. In United States v. Ono, 918 F.2d 1462, 1465 (9th Cir.1990), this circuit held that a failure to explicitly balance on the record did not constitute per se error. Rather, "it is enough that this court can conclude, based on a review of the record, that the district court considered Rule 403's requirements." Id. at 1465. Because the evidence is highly probative of intent, it is proper to infer that the district court conducted the appropriate balancing.
 
 VII
 
 31
 At trial, Customs Agent Hynes was asked a question about an interview he conducted with Lai Chiem Saelee. He responded by relating a hearsay statement another agent, Agent Landis, had related to him concerning Oucho Saelee. Agent Hynes testified that Landis had told him that Mr. Saelee is "lying to me." The defendants objected, and the court ordered the testimony stricken and told the jury to disregard it. The defense moved for a mistrial, claiming that the statement was prejudicial, was made intentionally by Agent Hynes, and would force Mr. Saelee to testify or at least introduce his post-arrest statement into evidence in order to rebut Agent Hynes' remark. Oucho and Lai Chiem Saelee argue that the district court abused its discretion in denying their mistrial motions.
 
 
 32
 When the district court denies a mistrial motion, we must weigh the forcefulness of the instruction against the prejudice that may have resulted from the improper statement. United States v. Morris, 827 F.2d 1348, 1351 (9th Cir.1987). In this case, the prejudice was minimal because the jury already knew that the Customs agents did not believe in Mr. Saelee's innocence, for if they had they would not have arrested him and referred him for prosecution. Further, the evidence against the Saelee defendants was strong, since it was based not only on the testimony of a co-conspirator who agreed to cooperate with the government, but also on a recorded call from Then-Sing Saelee to Lai Chiem and Oucho Saelee. Finally, the district court's curative instruction was given immediately after the jury heard the agent's improper testimony. In light of these factors, the district court did not abuse its discretion in denying the motion for a mistrial.
 
 VIII
 
 33
 While deliberating, the jury sent a note to the trial judge requesting "a ruling on when importation ends and distribution begins." The court declined defendants' request to define importation as ending when the goods enter the customs territory of the United States, specifically Los Angeles International Airport. Instead, the court asked the jurors to rely on the instructions it had already given.
 
 
 34
 The government argues that appellants' proposed response incorporates an incorrect statement of the law. We agree and therefore hold that the district court did not err in rejecting the defendants' proffered instruction.
 
 
 35
 Were defendants proposed instruction correct, even a person who receives contraband from abroad through the mail would not be guilty of importation, since the crime of importation would end when the substance crossed customs. Because Weiss received opium from Thailand in the mail, and because the Saelees drove to Weiss' house to pick up that opium, their activities clearly constituted importation. We therefore do not need to go further and decide the validity of the government's claim that importation continues until the controlled substances reach their final destination. See United States v. Leal, 831 F.2d 7, 9-10 (1st Cir.1987).
 
 IX
 
 36
 * The district court gave both Oucho and Lai Chiem Saelee a two-point upward adjustment for obstruction of justice, on the basis of their comments to Then-Sing Saelee in a recorded telephone call Then-Sing placed at the request of the government. The court found that Oucho and Lai Chiem Saelee tried to intimidate and influence Then-Sing to conceal evidence and lie to authorities. The Saelee defendants argue that such an upward adjustment is warranted only when their statements actually impede an investigation. We disagree. Application note (a) to Guideline Sec. 3C1.1 specifically classifies as obstruction of justice "threatening, intimidating, or otherwise unlawfully influencing a co-defendant [or] witness." See also United States v. Atkinson, 966 F.2d 1270, 1277 (9th Cir.1992) (urging witness not to speak to police and helping witness concoct story to tell authorities constitutes obstruction of justice).
 
 
 37
 The Saelee defendants also argue that the district court erred in finding that they were leaders in the opium importation scheme and giving them an additional two-point upward adjustment, under Guideline Sec. 3B1.1(c), as a result. The district court relied on Then-Sing Saelee's testimony and the findings of fact in the presentence report, which indicated that Oucho and Lai Chiem directed the activities of Weiss and Then-Sing Saelee. The court also found that Oucho and Lai Chiem had Then-Sing recruit Weiss and also gave Then-Sing $10,000 to pay Weiss for accepting delivery of the opium packages from Thailand.
 
 
 38
 The Saelee defendants argue that the district court's findings are clearly erroneous because they are based largely on the testimony of Then-Sing Saelee, who lied during trial and was seeking a reduced sentence in exchange for her cooperation. We reject this argument, finding no reason to second guess the district court's credibility determinations.
 
 
 39
 Oucho Saelee also argues that even if Then-Sing's testimony is believed, only Lai Chiem should be considered a leader. We reject this argument too. Substantial evidence indicates that Oucho Saelee was equally in charge of the opium scheme. It was Mr. Saelee who handed Then-Sing $10,000 to pay Weiss. Mr. Saelee, further, at one point asked Then-Sing if Weiss could be trusted, and he directed Then-Sing to make sure that the bags of opium, after being removed from the bamboo tubes, were placed in his red van.
 
 B
 
 40
 Weiss argues that the district court erred in finding that he was a minor, as opposed to a minimal, participant under Guideline Sec. 3B1.2. We agree with the district court that Weiss does not qualify as a minimal participant because he took steps to open the containers of opium, received $10,000 for his participation, looked outside his window several times to see if police were in the area, and attempted to hide some of the opium in his closet. Application notes one and two to Guideline Sec. 3B1.2 indicate that minimal participant status is to be "used infrequently." U.S.S.G. Sec. 3B1.2, comment (n. 2). The notes further state that a minimal participant will lack knowledge or understanding of "the scope and structure of the enterprise and of the activities of others...." U.S.S.G. Sec. 3B1.2, comment (n. 1). Weiss' role was sufficiently substantial to preclude him from being sentenced as a minimal participant.
 
 
 41
 Weiss also argues that the district court erred by failing to hold a hearing to inquire into why the government did not file a motion, under Guideline Sec. 5K1.1, for a downward departure for the provision of substantial assistance. Weiss contends that the government failed to file a Sec. 5K1.1 motion because he insisted on exercising his constitutional right to go to trial rather than admit his involvement and plead guilty.
 
 
 42
 The district court held that a hearing would be unnecessary because Weiss did not provide sufficient assistance to the government to warrant a downward departure. Had the government made a motion under Sec. 5K1.1, the court stated, it would have denied it. The decision whether to grant a downward departure rests with the sound discretion of the district court. We hold that the district court did not abuse its discretion in concluding that Weiss' assistance was insufficiently substantial to warrant a downward departure. Because Weiss has not shown that he actually provided substantial assistance, it is unnecessary to inquire into the government's reason for not filing a motion for a downward departure under Sec. 5K1.1. See Wade v. United States, 112 S.Ct. 1840, 1844 (1992) (provision of substantial assistance is a necessary precondition for downward departure under Sec. 5K1.1).
 
 CONCLUSION
 
 43
 The convictions and sentences of defendants Roy Weiss, Oucho Saelee, and Lai Chiem Saelee are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Oucho Saelee claims, in his reply brief, that the evidence was insufficient to support his convictions for possession of opium with intent to distribute it and conspiracy to distribute opium. Because "legal issues raised for the first time in reply briefs are waived," United States v. Bentson, 947 F.2d 1353, 1356 (9th Cir.1991), we do not consider this claim