**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald Eugene DAVIS,
Defendant–Appellant.**

**No. 90–30137.**

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 5, 1990.*

Decided Jan. 4, 1991.

in the estate is further exempt to the extent of $1,135.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Brian Patrick Conry, Portland, Or., for defendant-appellant.

Robert B. Ross, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before WRIGHT, CHOY and THOMPSON, Circuit Judges.

CHOY, Circuit Judge:

Ronald E. Davis appeals from a March 26, 1990 judgment sentencing him to thirty-four months in prison, to be followed by two years on probation. Davis alleges (1) that the trial court erred when it calculated his criminal history score by failing to count two "related" cases as one sentence under section 4A1.2(a)(2) of the United States Sentencing Guidelines; [1] and (2) that the trial court erred when it calculated $150,000 to be the "probable or intended" loss resulting from his scheme to defraud Levix–U.S.A. Because neither of Davis's contentions has merit, we AFFIRM the judgment of the lower court.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 19, 1989, a federal grand jury indicted Davis under 18 U.S.C. § 1343 on six counts of wire fraud involving (1) the theft of 1000 ceiling fans valued at $11,800, 24,000 pairs of panty hose valued at $14,-400, one round-trip first-class airline ticket worth $1,148.00, various shop tools worth $13,200, and (2) the attempted thefts of one first-class round-trip airline ticket and $150,000 in precious gems. On January 16, 1990, Davis pled guilty to count IV, a scheme to defraud Levix–U.S.A. of some $110,000 in diamonds and $40,000 in rubies.

Davis's method of operation was to call a business and place an order, using a false name, say "Mr. X." He would ask for the victim's bank account number and promise to pay for the order by wire transfer. Later, he or an accomplice would call the victim, falsely identify himself as a bank representative, and falsely report that the bank had received a wire transfer from "Mr. X." The victim would then ship the order to Davis and Davis would sell the stolen goods. Davis was also charged with using the same scheme in 1984 to steal 1,500 pounds of crab meat and 500 pounds of shrimp, worth more than $13,000, from four Seattle seafood suppliers.

At a sentencing hearing on March 20, 1990, the trial court calculated Davis's criminal history score at 12, based on four prior convictions, each with a score of 3. Davis argued instead for a criminal history score of 9, maintaining that two of the convictions stemmed from "related" cases the scores of which should be counted as a single score in accordance with U.S.S.G. § 4A1.2(a)(2). The trial court, however, ruled that the cases were unrelated in light of *United States v. Gross*, 897 F.2d 414, 416 (9th Cir.1990).

One of the prior convictions in question stemmed from Davis's December 23, 1981 arrest in Everett, Washington on three counts of issuing bad checks. Davis was subsequently sentenced in Snohomish County Superior Court on May 17, 1983. The other conviction stemmed from Davis's arrest, sometime in January 1983, for Theft I in Seattle, Washington. For that crime, Davis was sentenced in King County on May 13, 1983.

## STANDARDS OF REVIEW

■■■ We review *de novo* a district court's application of the United States Sentencing Guidelines, to the extent that such application involves a mixed question of law and fact. *United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989) (citing *United States v. Sanchez–Lopez*, 879 F.2d 541, 558 (9th Cir.1989)).[2] However, in

---

**1.** "Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history." United States Sentencing Commission, *Guide-*

*lines Manual* § 4A1.2(a)(2) (Nov.1989) (hereinafter "U.S.S.G.").

**2.** Counsel for Davis incorrectly states that *United States v. (Diego) Restrepo*, 884 F.2d 1294 (9th Cir.1989), has been overruled. Counsel appar-

reviewing a district court's determination of underlying facts in connection with sentencing, this court will reverse only those findings which are clearly erroneous. *Gross,* 897 F.2d at 416; 18 U.S.C. § 3742(e) (1988).[3]

■ The first issue presented for review, whether two cases are "related" for purposes of U.S.S.G. § 4A1.2(a)(2), is a mixed question of law and fact subject to *de novo* review. *See Sanchez–Lopez,* 879 F.2d at 558; *cf. Gross,* 897 F.2d at 416 (where both parties stipulated to pertinent facts, only question of law remained). The second issue, the district court's calculation of the amount of probable or intended loss due to Davis's scheme, is a factual finding to be reviewed for clear error in accordance with 18 U.S.C. § 3742(e). *United States v. Wills,* 881 F.2d 823, 827 (9th Cir.1989).

## ANALYSIS

### I.

### CRIMINAL HISTORY SCORE

Davis properly preserved this issue for review by raising timely objections, both before and during his sentencing hearing, in accordance with Federal Rule of Criminal Procedure 51. Far from raising an alternate theory on appeal, Davis has consistently maintained three grounds in support of his contention that the two prior state convictions were "related cases" under the Commentary to section 4A1.2 of the United States Sentencing Guidelines. First, Davis alleged that both convictions were for the same type of crime, namely writing checks on closed bank accounts. Second, Davis alleged, as a matter of fact, that Washington state courts had "consolidated" the two cases for sentencing. Third, Davis alleged that the cases were "consolidated," as a matter of Washington

state law, because he had received concurrent sentences for the two convictions.

A. *Davis's prior convictions arose from two criminal cases which were "unrelated" within the meaning of U.S. S.G. § 4A1.2.*

■ The Commentary to section 4A1.2 of the sentencing Guidelines states, in Application Note 3, that: *"Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing."* (emphasis added). Thus, the Commission sets forth three alternative definitions of "related cases" for the federal courts to apply. However, in *United States v. Gross,* 897 F.2d at 416–17, this court held generally that "application notes are not binding law," but merely "advisory commentary to assist in the application of the statute."

The Sentencing Commission acknowledged that the definition of "related cases" set forth in Application Note 3 was purposefully very broad. In order to compensate for this overbreadth, it provided that sentencing courts could depart from the Sentencing Guidelines, but only in accordance with the procedures outlined in section 4A1.3.

> The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public.... In such circumstances, the court should consider whether departure is warranted. *See* § 4A1.3.

U.S.S.G. § 4A1.2, comment. (n. 3).

Nevertheless, in *Gross,* this court narrowly construed the phrase "consolidated for ... sentencing." In *Gross,* both par-

---

ently confused the former case with *United States v. (Dario) Restrepo,* 883 F.2d 781 (9th Cir.1989) *withdrawn* and *reh'g granted,* 896 F.2d 1228, *reh'g,* 903 F.2d 648, *reh'g en banc granted,* 912 F.2d 1568 (1990).

**3.** "The court of appeals shall give due regard to the opportunity of the district court to judge the

credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1988).

ties stipulated that the three state cases in question had arisen out of "factually unrelated" criminal actions and that defendant Gross had received three concurrent sentences for the crimes at a single hearing. *Gross,* 897 F.2d at 416. Upon these facts, this court implicitly held, as a matter of law, that "factually unrelated" cases cannot be "related" under section 4A1.-2(a)(2) of the Sentencing Guidelines. *Id.* In so holding, this court rejected only that "part of Application Note 3 that suggests that cases consolidated for sentencing are to be deemed related." *Id.* at 416.

In contrast to this circuit, the Fifth Circuit has explicitly accorded deference to Application Note 3. *United States v. Metcalf,* 898 F.2d 43, 46 n. 6 (5th Cir.1990). Instead of narrowly defining the term "related cases," the Fifth Circuit has merely endorsed upward departure from the Sentencing Guidelines in accordance with § 4A1.3. *Id.* The Guidelines authorize such departure whenever the overbroad definition of "related cases" produces a criminal history score which "underrepresents the seriousness of a defendant's criminal history and the danger that he presents to the public." U.S.S.G. § 4A1.2, comment. (n. 3).

Although *Gross* and *Metcalf* employ different analytical approaches, they both produce essentially the same outcome when applied to the case at bar. Because Davis's convictions are unrelated under § 4A1.2, the district court properly recorded them as two separate criminal history scores.

### B. *Davis's cases did not occur on a single occasion.*

Davis never maintained that the underlying offenses were committed on a single occasion. Nor did he argue that they occurred within the same general time period. The presentence investigation report indicates that Davis was arrested for these crimes two years apart and tried by state courts in two different jurisdictions. He was arrested for the first crime in 1981 and for the second crime in 1983. The 1983 arrest was for criminal acts committed in 1983. This indicates that the underlying crimes were committed at least thirteen months apart.

### C. *Davis's cases were not part of a common scheme or plan.*

As to his first contention, Davis states correctly that both convictions stemmed from the same kind of underlying offense—the unlawful issuance of bad checks. The presentence report indicates that he had one conviction for unlawful issuance of bad checks in Snohomish County for paying rent with a bad check and one Theft I conviction in King County for buying a pickup truck with a bad check. However, Davis has never maintained that the checks were written during the same time period or that they were drawn on the same closed bank account.

Although Davis's two crimes were of a similar type and shared the same *modus operandi,* they nevertheless constituted two separate crimes which he apparently perpetrated thirteen months apart. The Eleventh Circuit has held, and we agree, that a common *modus operandi* is not enough to demonstrate a single common scheme or plan. *United States v. Jones,* 899 F.2d 1097, 1101 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990).

In light of *Jones,* we hold that Davis's two crimes did not arise from a single common scheme or plan within the meaning of section 4A1.2(a)(2). In so holding, we observe that the case at bar is distinguishable on its facts from *United States v. Houser,* No. 90–30043, slip op. 13005, 13015, 1990 WL 155600 (9th Cir. Oct. 18, 1990), wherein defendant Houser alleged that he was improperly sentenced as a career offender. To qualify for career offender status under section 4B1.1(3) of the Guidelines, a criminal must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(3). Houser's two prior felony convictions, both for the criminal sale of dangerous drugs, occurred on June 7, 1984 and on July 19, 1984 in state courts in two different Montana coun-

ties. *Houser*, No. 90–30043, slip op. at 13015.

This court held that the district court erred when it treated the two convictions as unrelated under U.S.S.G. § 4A1.2(a)(2). *Id.* at 13017. Houser's two 1984 drug convictions were related because they were "part of a common scheme or plan" under U.S.S.G. § 4A1.2(a)(2), comment. (n. 3). Both resulted from a single criminal investigation. Moreover, both illegal drug sales took place between Houser and the same government agent within "a short period of time." *Id.* at 13016. It was the nature of the offenses which was controlling, not mere geographical separation.

■ Davis's case is distinguishable from *Houser* on three factual grounds. First, Davis committed his crimes over thirteen months apart and not "within a short period of time." Second, each crime involved a different victim, in one case a landlord and in the other the seller of a pickup truck. Third, Davis was arrested by two different law enforcement agencies. The arrests apparently took place two years apart, and Davis has presented no evidence that the arrests arose out of a single criminal investigation conducted by a single law enforcement agency, as was the case in *Houser*.

D. *Davis's cases were not "consolidated" for trial or sentencing either as a matter of fact or as a matter of federal law.*

Application Note 3 contains no definition of the term "consolidated." Although this court did not define the term "consolidated" in *Gross*, mere consolidation was clearly not sufficient to establish that cases were related. To qualify as "related," the cases also had to be factually related. Therefore, it did not matter whether the three state cases had ever been consolidated. However, it seems that the *Gross* court implicitly conceded that cases are consolidated for sentencing under the Guidelines' Commentary if a court issues concurrent sentences for them at a single hearing. Otherwise the *Gross* court would not have had to reject Application Note 3, in part, as it did.

■ As to Davis's second contention, he asserts that his cases were consolidated, as a matter of fact. Yet he has produced no court order or judicial finding of consolidation. Nor is there any evidence in the record that the two cases shared the same docket number in state court. The Fifth Circuit has held, and we agree, that such facts militate against a finding of consolidation. *Metcalf*, 898 F.2d at 46.

Davis alleges, on the basis of a state court plea agreement, that he was sentenced on the same day in 1983 for the unlawful issuance of bad checks and Theft I convictions. He claims that the presentencing report incorrectly listed his convictions as occurring on different dates, 5–13–83 and 5–17–83. The two documents are indeed in conflict. However, as the district court observed, Davis was sentenced by two different state courts for two unrelated offenses. That sentencing *might* have occurred on the same day is completely irrelevant in light of these facts.

■ As to Davis's third contention, the laws of the state of Washington do not govern a federal court's interpretation of the United States Sentencing Guidelines. Davis argues that the King County prosecutor's office agreed to count the two convictions as one for purposes of his criminal history. Davis points to a handwritten note in the margin of his plea agreement as proof of this fact. Even if this allegation is true, the methods which a state prosecutor uses to calculate a criminal history score under a Washington state sentencing statute have no legal bearing on this court's construction of the federal Sentencing Guidelines.

■ Although the state courts did impose concurrent sentences on Davis, we hold that this fact, standing alone, is not dispositive. *United States v. Smith*, 905 F.2d 1296, 1303 (9th Cir.1990) (defendant resentenced to concurrent terms for violating probation on burglary and car theft convictions not entitled to treat them as single conviction); *Jones*, 899 F.2d at 1101 (robbery and attempted robbery of two Orlando banks separated by one and one-half

hours not "consolidated" because of concurrent sentences); *United States v. Jones*, 898 F.2d 1461, 1463–64 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990) (where commission and sentencing occurred separately, convictions for assault and cocaine sale not "consolidated" by single resentencing hearing following revocation of probation); *United States v. Flores*, 875 F.2d 1110, 1114 (5th Cir.1989) (six convictions not "consolidated" or "related" simply because defendant received six concurrent sentences).

Moreover, the record on appeal indicates that the sentences were issued at separate hearings and that the fact that they were concurrent had nothing to do with the relatedness of the underlying offenses. The King County court, rather than making any specific reference to the Snohomish conviction, ordered incarceration to run concurrently with any prior existing sentences. In *Flores*, 875 F.2d at 1114, the Fifth Circuit found it persuasive that one of the concurrent sentences merely arose by operation of law, and that in two other cases, the judges "made no reference to any of the other convictions."

Similarly, the Snohomish County Superior Court sentenced Davis to five years in prison to run concurrently with a prior sentence of ten years in prison for violating probation on a 1979 Theft I conviction. In both cases, the state court issued a sentence to run concurrently with existing sentences for unrelated crimes. The fact that they were concurrent was of no apparent significance to either sentencing court.

### E. *Davis's cases were "factually unrelated" under Gross.*

The foregoing analysis demonstrates that Davis's cases were factually unrelated. Davis tries to distinguish his own case from *Gross* on the ground that his two convictions involved the same type of underlying offense and were therefore factually related. In so arguing, Davis merely confounds the term "factually related" as it has been construed by the courts.

A common *modus operandi*, standing alone, is not sufficient to establish that two cases are factually related. In *Metcalf*, 898 F.2d at 46, the Fifth Circuit ruled that defendant Metcalf's crimes, committed some six months apart, were "not factually tied in any way." One crime involved the September 28, 1982 burglary of a dry cleaning establishment and the other involved the March 13, 1983 burglary of an automobile. *Id.* at 44. Although both convictions were for the same type of underlying crime, they were deemed factually unrelated.

This court implicitly acknowledged this principle in *Gross*, 897 F.2d at 416–17, wherein defendant Gross claimed that his three crimes were related, under section 4A1.2(a)(2), because they had been consolidated for sentencing at a single hearing. Since both parties had stipulated that the three crimes were "factually unrelated," this court held that they could not be "related" under section 4A1.2(a)(2), as a matter of law. *Id.* at 416. The three crimes included two forgery convictions and one nonsufficient funds check conviction. *Id.* at 415. Although both forgery convictions shared the same *modus operandi*, they were nevertheless "factually unrelated," implying that *modus operandi* was of little or no relevance to the court's analysis.

■ In light of *Gross* and *Metcalf*, we hold that the sole fact that two underlying offenses share a common *modus operandi* has no bearing on whether the criminal cases associated with them are factually related.

## II.

## PROBABLE OR INTENDED LOSS DUE TO ATTEMPTED FRAUD

Davis argues that the district court incorrectly calculated his offense level because the court incorrectly calculated the amount of loss resulting from his attempted fraud. This argument is without merit. The district court properly applied sections 2F1.1 and 2X1.1 of the Sentencing Guidelines to determine Davis's offense level and accurately assessed the "probable or intended" loss resulting from Davis's attempted fraud.

The Commentary to section 2F1.1 provides that the sentencing court need only arrive at a reasonable estimate of the loss.[4] The district court need not calculate a precise or exact figure. Where the crime is an attempt, as in the case at bar, the Commentary explicitly recommends using "probable or intended" loss rather than actual loss, especially where the probable or intended loss is greater.[5] In *United States v. Wills*, 881 F.2d at 827, this court adhered to the Commission's advisory Commentary in calculating the loss from an attempted credit card fraud.

 In the case at bar, the actual loss from Davis's crime was zero because the victim never actually shipped the jewels to Davis. However, the intended loss was substantial. The evidence overwhelmingly indicates that Davis intended to defraud the victim of $150,000 in jewels. This was the market value of the jewels he ordered.[6] The probable loss was likewise $150,000, for had the attempt succeeded, Davis would probably have obtained $150,000 in jewels. We hold that, for purposes of sentencing a convicted criminal for attempted fraud under sections 2F1.1 and 2X1.1 of the Guidelines, the term "probable" loss refers not to the probability that an attempt will succeed, but rather to the amount of loss that the victim probably would suffer, assuming the attempt did succeed.[7]

Davis argues that the intended loss was zero because he never intended for the fraud to succeed and only perpetrated it under the coercion of alleged co-conspirators, Tom Hudgens and Homer Britain. Among jewelers, Davis claims, it is customary business practice for the buyer to personally inspect the goods prior to shipment. Thus, Davis argues, he knew all along that it was impossible for him to succeed in his attempt. Davis cites no evidence in the record to substantiate any of these assertions. Although the record indicates that Tom Hudgens and Homer Britain are indeed unsavory characters, it contains no evidence that Hudgens or Britain coerced Davis in any way.

Throughout the period in question, Davis's conduct was entirely consistent with an intent to defraud Levix–U.S.A. He had used this scheme successfully on many prior occasions. It failed here only because of a mistake of fact on Davis's part. This mistake of fact, however, did not negate the *mens rea* for Davis's crime. That Davis's attempt was less likely to succeed, because he was unfamiliar with trade custom among jewelers, has no bearing on whether Davis had the requisite intent to defraud.

 Furthermore, Davis's guilty plea was tantamount to a concession that he possessed the requisite intent for attempted fraud. *See United States v. Bos*, 917 F.2d 1178, 1182 (9th Cir.1990). Even assuming that Davis had no intent to defraud, the Guidelines nevertheless permit the district court to use probable loss in lieu of intended loss. Thus, regardless of Davis's intent, the probable loss to the vic-

---

**4.** "The amount of loss need not be precise. The court is not expected to identify each victim and the loss he suffered to arrive at an exact figure. The court need only make a reasonable estimate of the range of loss, given the available information." U.S.S.G. § 2F1.1, comment. (n. 8).

**5.** "In keeping with the Commission's policy on attempts, if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss. For example, if the fraud consisted of attempting to sell $40,000 in worthless securities, or representing that a forged check for $40,000 was genuine, the 'loss' would be treated as $40,000 for the purposes of this guideline." U.S.S.G. § 2F1.1, comment. (n. 7).

**6.** " 'Loss' means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue." U.S.S.G. § 2B1.1, comment. (n. 2).

**7.** "In cases of partially completed conduct, the loss is to be determined in accordance with the provisions of § 2X1.1 (Attempt, Solicitation, or Conspiracy). *E.g.*, in the case of the theft of a government check or money order, loss refers to the loss that would have occurred if the check or money order had been cashed. Similarly, if a defendant is apprehended in the process of taking a vehicle, the loss refers to the value of the vehicle even if the vehicle is recovered immediately." U.S.S.G. § 2B1.1, comment. (n. 2).

tim, if the plan had succeeded, was $150,-000.

 Given Davis's unsubstantiated assertions and his reputation for untruthfulness, the district court did not commit clear error in finding that Davis acted without coercion in this criminal enterprise.[8] Given Davis's extensive criminal record, given his successful use of this very same scheme in previous frauds, and given his earnest attempt to employ that scheme again here, the district court did not commit clear error when it concluded that Davis fully intended to steal the jewels and that the probable loss to the victim amounted to $150,000.

## CONCLUSION

We AFFIRM the judgment of the district court sentencing Davis to consecutive terms of thirty-four months in prison and two years on probation.

---

**8.** As the Government correctly points out and as the defendant concedes, this court may not here review the district court's discretionary refusal to depart downward from the Sentencing Guidelines. *United States v. Morales,* 898 F.2d 99, 101–03 (9th Cir.1990). Nevertheless, we may review the district court's finding as to coercion to the extent that it relates to the calculation of intended or probable loss.