990 F.2d 1262
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Craig Curtis HARRIS, Defendant-Appellant.
 No. 92-50232.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 2, 1993.
Decided March 23, 1993.
 
 Before SCHROEDER, DAVID R. THOMPSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Craig Curtis Harris appeals the 24-month sentence imposed after his guilty pleas to one count of producing counterfeit access devices in violation of 18 U.S.C. § 1029(a)(1), and one count of possession of fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3).
 
 
 3
 The first count included Harris' activities on August 26, 1991. On that date a confidential informant supplied him with six blank credit cards and names and account numbers. Harris later returned the cards, which were embossed with the new identifications, and received $2,400. The second count included the events of October 23, 1991. Harris paid $10,000 to federal agents for 125 blank Citibank credit cards, and was arrested shortly thereafter.
 
 
 4
 Harris appeals the district court's decision to calculate the base offense level based on a loss figure of $2,400 from count one and $10,000 for count two under section 2F1.1 of the Sentencing Guidelines. He argues that the district court improperly raised the offense level from 2 to 5, resulting in a sentencing range of 18 to 24 months, instead of 9 to 15 months. We affirm.
 
 
 5
 Violations of 18 U.S.C. § 1029 fall within the provisions of section 2F1.1 of the Sentencing Guidelines, as Offenses Involving Fraud or Deceit. See United States v. Koenig, 952 F.2d 267, 272 (9th Cir.1991). Section 2F1.1 allows incremental increases in offense level for specific offense characteristics as the loss exceeds $2,000. U.S.S.G. § 2F1.1(b)(1). Application Notes 7 and 8 to U.S.S.G. § 2F1.1(b)(1) explain how district courts are to apply the loss provisions, and were used by the district court in this case.
 
 
 6
 Application Note 7 directs the court to evaluate total loss by reference to U.S.S.G. § 2B1.1. It provides that:
 
 
 7
 Valuation of loss is discussed in the Commentary to § 2B1.1.... As in theft cases, loss is the value of the money, property, or services unlawfully taken; it does not, for example, include interest the victim could have earned on such funds had the offense not occurred. Consistent with the provisions of § 2X1.1 ..., if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss. Frequently, loss in a fraud case will be the same as in a theft case. For example, if the fraud consisted of selling or attempting to sell $40,000 in worthless securities, or representing that a forged check for $40,000 was genuine, the loss would be $40,000.
 
 
 8
 U.S.S.G. § 2F1.1, comment. (n. 7).
 
 
 9
 The Commentary to Note 2 to section 2B1.1 of the Guidelines, which is cited in Note 7 to section 2F1.1 of the Guidelines, states that:
 
 
 10
 "Loss" means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim. When property is damaged, the loss is the cost of repairs, not to exceed the loss had the property been destroyed. Examples: (1) In the case of a theft of a check or money order, the loss is the loss that would have occurred if the check or money order had been cashed. (2) In the case of a defendant apprehended taking a vehicle, the loss is the value of the vehicle even if the vehicle is recovered immediately.
 
 
 11
 U.S.S.G. § 2B1.1, comment. (n. 2).
 
 
 12
 Application Note 8 to section 2F1.1 of the Sentencing Guidelines provides:
 
 
 13
 For the purposes of subsection (b)(1), the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and the revenues generated by similar operations. The offender's gain from committing the fraud is an alternate estimate that ordinarily will underestimate the loss.
 
 
 14
 U.S.S.G. § 2F1.1, comment. (n. 8).
 
 
 15
 The district court relied on Application Note 8 to section 2F1.1 in determining that the gain to Harris on count one should be interpreted as the amount of loss. Because Harris received $2,400 for the credit cards, the loss was $2,400. The district court accepted $10,000 as the amount of loss on count two. It ruled that $10,000 was a "reliable" figure that indicated the value of the credit cards to defendant, and applied the section 2B1.1 standards spelled out in Note 2 to section 2F1.1. It rejected the government's request to employ a higher figure based on the appellant's intended loss from the crime.
 
 
 16
 Harris argues on count one that Note 8 does not apply to his crime because that note is limited to determining a loss when there is more than one victim or when there is a scheme to defraud and where the market is affected. There is no basis for so limiting application of the note. The district court was correct to use $2,400 as the appropriate calculation because it represents the gain to the defendant from his transaction. U.S.S.G. § 2B1.1, comment. (n. 8).
 
 
 17
 On count two, Harris argues that there was no actual loss because the appellant never used the blank credit cards. However, in Koenig, 952 F.2d at 271, we upheld the district court's use of a standard of intended loss from the scheme under Application Note 7, even though the crime was not completed.
 
 
 18
 In this case, the government recommended a higher total than the $10,000 figure employed by the district court, based on probable or intended losses from the use of the credit cards. The district court instead used a more conservative figure which it found to be more "reliable." Under Note 2, the ordinary measure of loss is the fair market value of the property involved. U.S.S.G. § 2B1.1, comment. (n. 2). In United States v. Burns, 894 F.2d 334, 336 (9th Cir.1990), we acknowledged that one method of evaluating loss is to look at the "amount that a willing buyer is prepared to pay." The district court's determination of the amount of loss need not be precise. United States v. Davis, 922 F.2d 1385, 1392 (9th Cir.1991). The district court here employed a "reasonable" figure based on the price the appellant was willing to pay for the credit cards, a figure that falls within the scope of the Sentencing Guidelines' calculation of loss.
 
 
 19
 The two figures in this case are clearly reasonable calculations of the gain to defendant and the fair market value of the property and are permitted by the Guidelines. The district court assessed a reasonable value for the losses, see id., and its judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3