12 F.3d 1109
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Thomas MacMILLAN, a/k/a David Thomas Barrett,
Defendant-Appellant.
 No. 92-30497.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided Dec. 3, 1993.
 
 Before: WRIGHT, GOODWIN, and HUG, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant David MacMillan challenges his bank robbery conviction and subsequent 210-month sentence. Specifically, MacMillan challenges the district court's admission of incriminating statements made to police in violation of his rights established in Miranda v. Arizona, 384 U.S. 436 (1966). MacMillan further challenges the district court's determination that he was a "career offender" for sentencing purposes.
 
 I. Denial of Motion to Suppress
 
 3
 We review a district court's denial of a motion to suppress evidence de novo. United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988). This court will accept a district court's factual findings unless those findings are clearly erroneous. Id.
 
 A. Invocation of Right to Remain Silent
 
 4
 At the outset of the interview, MacMillan interrupted the initial reading of his Miranda rights by saying, "I'm not going to say nothing. No." Detective Drews continued to review the Miranda rights and attempted to clarify whether MacMillan understood those rights. In response to a question by Drews inquiring if MacMillan wished to speak with him, MacMillan inconsistently responded, "Go ahead." The parties dispute whether this exchange was an effective invocation of the right to remain silent.
 
 
 5
 MacMillan's initial invocation of his Miranda rights was a clear indication that he wished to cut off further questioning. The Supreme Court's language in Miranda states: "[If a defendant] indicates in any manner that he does not wish to be interrogated, the police may not question him." Miranda, 384 U.S. at 445. Moreover, "[t]he mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries." Id.
 
 
 6
 The United States asserts that MacMillan's statement "Go ahead" effectuated a valid waiver of the defendant's Miranda rights. To establish a valid waiver, the United States must show that the accused "knowingly and voluntarily" waived his rights. United States v. Wallace, 848 F.2d 1464, 1475 (9th Cir.1988). When a constitutional right is at issue, the government's burden to establish a valid waiver is particularly great. The "court must afford the defendant every reasonable presumption against waiver." Id.
 
 
 7
 In determining whether a valid waiver occurred, we must consider the "background, experience, and conduct of the accused." North Carolina v. Butler, 441 U.S. 369, 374-75 (1979) (quoting Johnson v. Zerbst, 304 U.S. 458 (1938)). The transcript reveals that MacMillan was obviously quite confused. His initial invocation of his right to remain silent, contrasted with his immediate inconsistent statement authorizing Drews to proceed with the interview, provides little insight into MacMillan's true intentions. In addition, MacMillan's 83 assertions of "leave me alone," coupled with his refusal to provide direct answers to questions regarding the bank robbery, militate against a finding of waiver in this case.
 
 
 8
 Moreover, while there was no evidence that the defendant was "threatened, tricked, or cajoled" into discussing the incident with Detective Drews, the record reflects the defendant's confused state of mind. Miranda, 384 U.S. at 476; Connecticut v. Barrett, 479 U.S. 523, 527 (1987). The transcript presents numerous inconsistencies and therefore raises doubts about the defendant's wishes. Although MacMillan indicated his willingness to speak with Drews, it is unclear what the defendant expected of that conversation. For example, he stated that he wished to speak with Drews "man to man" and repeatedly indicated his desire to discuss his past, his brother's death and other personal problems. Therefore, given the prosecution's heavy burden to establish waiver, the record does not support such a finding in this case. See Wallace, 848 F.2d at 1475.
 
 B. Right to Counsel
 
 9
 The Supreme Court stated in Edwards v. Arizona that once an accused makes clear "his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 484-85 (1981). "[I]t is inconsistent with Miranda ... for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." Id. at 485.
 
 
 10
 During questioning, MacMillan unequivocally indicated that he wished to have an attorney present. Drews responded that he could "certainly have one of those." MacMillan inquired, however, "You want to talk to me man to man," and Drews responded affirmatively. Although MacMillan acknowledged that he wanted "to talk about it all ... about my brother ... about where I've been," subsequent communications such as these cannot be used to cast doubt on the clarity of an initial request for counsel. See Smith v. Illinois, 469 U.S. 91, 97-98 (1984) (per curiam).
 
 
 11
 A defendant's invocation of right to counsel insulates the suspect from further questioning "unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 485. We are required to determine if the defendant "freely and voluntarily wished to discuss this case without the presence of an attorney." Shedelbower v. Estelle, 885 F.2d 570, 574 (9th Cir.1989) (emphasis added), cert. denied, 498 U.S. 1092 (1991). A review of the transcript reveals that although MacMillan may have "freely and voluntarily" engaged in further discussion, he did not voluntarily engage in discussion about the bank robbery. Considering the totality of the circumstances--that MacMillan indicated that he wanted to discuss his family, that MacMillan wanted to talk "man to man," that MacMillan was not very responsive to the questions about the bank, but rather redirected the conversation to his girlfriend and his other personal problems--his statements do not reflect a willingness to discuss the bank robbery. The incriminating statements must be suppressed.
 
 C. Harmless Error
 
 12
 In spite of an error in denying a motion to suppress, a conviction can be sustained if the admission of the statements amounted to harmless error. Arizona v. Fulminate, 111 S.Ct. 1246, 1257 (1991); Collazo v. Estelle, 940 F.2d 411, 423-424 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992). The test for determining if such an error was harmless is whether the prosecution has proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967).
 
 
 13
 MacMillan's incriminating statements did not contribute to the conviction because his statements were inconsistent and therefore unpersuasive, and substantial evidence of MacMillan's guilt was produced at trial. For example, the prosecution established that shortly after the robbery MacMillan was arrested with the stolen money in his possession. Further, the robbery note bearing MacMillan's fingerprints, the purple ski mask, and the jacket and shoes identified at the scene were also found in MacMillan's possession and subsequently were produced at trial. Given that the evidence of MacMillan's guilt was substantial, the admission of his incriminating statements was likely "unimportant in relation to everything else the jury considered on the issue in question." See Yates v. Evatt, 111 S.Ct. 1884, 1893 (1991), overruled on other grounds, Estelle v. McGuire, 112 S.Ct. 475, 482 n. 4 (1991); Collazo, 940 F.2d at 424. The error complained of was harmless beyond a reasonable doubt.
 
 II. Career Offender Status
 
 14
 The question of whether two prior offenses are related under Sec. 4A1.2[1] of the Sentencing Guidelines is a mixed question of law and fact subject to de novo review. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992). Findings of fact contained in the district court's order are reviewed for clear error. United States v. Burns, 894 F.2d 334, 336 (9th Cir.1990).
 
 
 15
 The Guidelines provide that sentences are related if the sentences "resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. Sec. 4A1.2, comment. (n. 3) (1992). We have identified several factors relevant in determining whether prior convictions are part of a "common scheme or plan." United States v. Davis, 922 F.2d 1385, 1390 (9th Cir.1991). Those factors are (1) whether the crimes were committed within a short period of time; (2) whether the crimes involved the same victim; (3) whether the defendant was arrested by the same law enforcement agency for both crimes; and (4) whether the crimes were solved during the course of one investigation. Id. at 1390.
 
 
 16
 MacMillan asserts that he established the existence of a "common scheme or plan" because the same objective caused him to commit both the robberies, and because the crimes were carried out in a similar manner. We have held, however, that two crimes that share a common modus operandi do not necessarily support a finding of a common scheme or plan. Davis, 922 F.2d at 1391. The mere fact that the crimes are similar does not equate with a conclusion that the crimes are related. Chapnick, 963 F.2d at 227.
 
 
 17
 We have recognized that a "common scheme or plan" can be found if the crimes are conceived as a common program, jointly planned, or if the commission of one crime would necessarily entail commission of the other crime. Chapnick, 963 F.2d at 227 n. 5 (citing United States v. Ali, 951 F.2d 827, 827 (7th Cir.1992)). None of those factors is found in the present case. In fact, the district court found no evidence of a common scheme or plan, but rather concluded that they were "random reoccurrences of the kind of [criminal] conduct that ... Mr. MacMillan has engaged in for many years."
 
 
 18
 Similarly, undue emphasis should not be placed on the amount of time that passed between the commission of the offenses. In Chapnick, we refused to find the existence of a common scheme or plan even where the offenses were committed within two weeks of each other, and were prosecuted by the same agency. 963 F.2d at 225, 227. Therefore, the fact that MacMillan committed the offenses within several days of each other does not, by itself, establish the relatedness of these crimes for purposes of determining career offender status.
 
 
 19
 MacMillan cites two cases that he contends control the present case: United States v. Houser, 929 F.2d 1369 (9th Cir.1990), and United States v. Hummasti, 986 F.2d 337 (9th Cir.1993), cert. denied, 113 S.Ct. 2984 (1993). Neither of these cases supports his claims. In Houser, two sentences were properly treated as related sentences because both drug sales were made to the same government agent, both drug offenses were part of one investigation, and because there was significant evidence before the judge that the crimes resulted from a common scheme. The fact that the offenses were prosecuted by neighboring counties was a result of "geography and not the nature of the offenses." 929 F.2d at 1374. In Hummasti, the defendant committed two armed robberies within two days, was tried in state court on both charges, and received identical concurrent sentences. The court reasoned that because the cases were consolidated for sentencing the sentences should be treated as related for purposes of calculating the defendant's criminal history, despite the fact that no formal consolidation order was entered. 986 F.2d at 339. Contrary to MacMillan's assertions, these cases are inapposite to the present case because both involve a significantly greater degree of "relatedness" than does the present case.
 
 
 20
 MacMillan's previous convictions are not "related" for purposes of sentencing. The previous offenses were committed on different days, the victims of the crimes were different people, and the crimes were prosecuted by different sovereigns. Further, the offenses were not consolidated either for trial or sentencing. The fact that two bank robberies were committed within close proximity of each other does not warrant a conclusion that the offenses were related. See Chapnick, 963 F.2d at 227. The district court properly treated the underlying offenses as unrelated.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 1 U.S.S.G. Sec. 4A1.2(a)(2) provides in pertinent part:
 Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of [Sec. 4A1.1(a), (b), and (c) ].