129 F.3d 128
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff/Appellee,
v.
Floyd Daverlin OSBORNE, Defendant/Appellant.
 No. 96-50555.
 United States Court of Appeals, Ninth Circuit.
 Oct. 29, 1997.
Argued and Submitted Sept. 10, 1997.
Decided Oct. 29, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California, No. CR-93-98-LHM; Linda H. McLaughlin, District Judge.
 
 
 2
 Before: PREGERSON and HAWKINS Circuit Judges, and WEINER,[2] Senior District Judge.
 
 MEMORANDUM[1]
 
 3
 Following the vacatur of his sentence by another panel of the court, Floyd Daverlin Osborne was resentenced to a term of 188 months incarceration for conspiracy to manufacture phencyclidine ("PCP"), in violation of 21 U.S.C. § 846, 841(a)(1) (Count 1), possession of PCC with intent to manufacture PCP, in violation of 21 U.S.C. § 841(a)(1) (Count 3), and attempt to manufacture PCP, in violation of 21 U.S.C. § 841(a)(1) (Count 4) Osborne now challenges his new sentence. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We again remand for resentencing.
 
 
 4
 The prior decision of this court noted that Osborne's original sentence of 235 months appeared unusually harsh given the nature of his criminal history, background, and minimal involvement in the offense. We remanded the matter for reconsideration of the quantity of drugs involved in the offense and invited the district court to consider any other downward adjustment to the guidelines range that may be appropriate. On remand, the district court amended its findings and recalculated Osborne's base offense level to be 38, which was calculated based upon the government's expert chemist's conclusion that the 1.5 gallons of piperidine Osborne possessed would yield 3.3 kilograms of PCP.
 
 
 5
 Osborne objected to the presentence report, offering his own expert chemist's report that the 1.5 gallons of piperidine would yield 2.5 kilos of PCC, which in turn would yield between 2 and 2.5 kilos of PCP. The defense expert concluded that, depending on what form of PCP is being considered, the estimated yield could be as low as 1.75 to 2.25 kilos. The court accepted the government's conclusions and rejected the defense expert's conclusions, reasoning that since the government's chemist was present at the scene shortly after the lab was seized and personally observed the equipment and chemicals in the lab, he could make more accurate calculations of the yield.
 
 
 6
 Nowhere in the presentence report, however, is there any basis given to indicate that the government's ratio of 2.2 kilos of PCP yield per gallon of piperidine was valid. The ratio used by the government's chemist was apparently accepted by the district court because its chemist was present at the scene shortly after the lab was seized and observed the equipment and chemicals present in the lab. However, the government offered no evidence as to the condition of the laboratory or the purity of PCP which it could manufacture. Nor in our view did the district court sufficiently take into account the expert testimony offered by the defense. Accordingly, we again reverse and remand for reconsideration of the quantity of drugs involved in the offense.
 
 
 7
 Osborne next argues that the district court was clearly erroneous in failing to award a two-point downward adjustment to his base offense level pursuant to U.S.S.G. § 2D1.1(b)(4) for satisfying the "safety valve" requirements as set out in U.S.S.G. § 5C1.2. There is no dispute that Osborne met the first four requirements of § 5C1.2. The only issue is whether he satisfied the fifth requirement of "truthfully providing to the Government all information and evidence the defendant has concerning the offense." U.S.S.G. § 5C1.2(5). The district court was not clearly erroneous when it determined that he did not.
 
 
 8
 We have held that to qualify for the safety valve, "[t]he initial burden is incontestably on the defendant to demonstrate by a preponderance of the evidence that he is eligible for the reduction." United States v. Shrestha, 86 F.3d 935, 940 (9th Cir.), cert. denied --- U.S. ----, 117 S.Ct. 375 (1996) (citing United States v. Howard, 894 F.2d 1085, 1089-90 (9th Cir.1990)). "Once he has made this showing, however, it falls to the Government to show that the information that the defendant has supplied is untrue or incomplete." Id. We have termed subsection (5) a "tell all you can" requirement, mandating that the defendant provide prior to sentencing "all information at his disposal relevant to the offense, whether or not it is useful to the Government." United States v. Sherpa, 97 F.3d 1239, 1243 (9th Cir.1996).
 
 
 9
 While we have never directly addressed how a defendant satisfies his burden of showing eligibility where the government does not seek his information, this is not a case where we need examine in great depth what affirmative steps are required by a defendant in such circumstances. The record is clear that Osborne took no steps at all. He never actually met with government agents to provide information--truthful or otherwise. He merely showed that his attorney was in contact with the government about possible cooperation in the prosecution of a co-defendant in exchange for favorable consideration by the government. Osborne's mere offer to cooperate was not in itself sufficient to demonstrate by a preponderance of the evidence that he told the government prior to sentencing all information at his disposal that was relevant to the offense. The government's refusal of his offer to cooperate did not excuse the affirmative requirement that defendant actually provide the type of information required by § 5C1.2 in order to qualify for the safety valve. See United States v. Ivester, 75 F.3d 182, 185-86 (4th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 2537 (1996) ("defendants cannot claim the benefit of § 3553(f) by the mere fact that the Government never sought them out for debriefing"). While Osborne is correct that a defendant who maintains his innocence through sentencing can nevertheless qualify for the safety valve, see Shrestha, 86 F.3d at 939 ("we see no reason to require a defendant to meet the requirements for acceptance of responsibility in order to qualify for relief under the safety valve provision"), it remains that the record reflects no actions on Osborne's part to qualify for the reduction. As such, the district court's failure to award the two-point downward adjustment was not clearly erroneous.
 
 
 10
 Osborne next argues that the district court erred in granting him only a two point reduction for being a minor participant, rather than a four point reduction for being a minimal participant. U.S.S.G. § 3B1.2 provides:
 
 
 11
 Based on the defendant's role in the offense, decrease the offense level as follows:
 
 
 12
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 
 
 13
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 
 
 14
 In cases falling between (a) and (b), decrease by 3 levels.
 
 
 15
 A downward adjustment for minimal participation is to be used infrequently. United States v. Hoac, 990 F.2d 1099, 1105-06 (9th Cir.1993). The evidence as a whole indicates that the district court was not clearly erroneous when it determined that Osborne was more than a minimal participant.
 
 
 16
 The commentary to § 3B1.2 states that a minimal participant is one who is "plainly among the least culpable." U.S.S.G. § 3B1.2 comment 1. The defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." Osborne was not plainly among the least culpable. The charges against his codefendant Rencher were dismissed by the government without prejudice; the other person arrested at the Brim residence that night, Graham, was apparently never charged with a. crime. Osborne's possession of a key to the garage was also evidence to support his higher place in the hierarchy of the conspirators. Rencher and Graham did not have keys to the lab.
 
 
 17
 Osborne's knowledge of the scope and structure of the enterprise and his place in the enterprise can also be clearly inferred from the evidence. He delivered the piperidine--an essential precursor chemical to the manufacture of PCC--to the drug lab. He entered the drug lab at a time when a completed batch of PCC was in the lab, ready to be turned into PCP. His delivery of piperidine was not needed to complete the processing of the existing PCC into PCP and thus must have been intended by the members of the enterprise for the next batch of PCC to be manufactured. Because the record was sufficient for the district court to conclude that Osborne knew that he was delivering piperidine to the fully equipped and operating lab that would be used to manufacture another batch of PCP, it was not clearly erroneous for the court to conclude that Osborne was more than a minimal participant in the crimes for which he was convicted.
 
 
 18
 Finally, Osborne argues the district court abused its discretion in failing to award a downward adjustment to his base offense level pursuant to U.S.S.G. § 2D1.1. We have held on numerous occasions that a district court's discretionary refusal to depart downward is not subject to appellate review. See, e.g., United States v. Rose, 20 F.3d 367, 375 (9th Cir.1994); United States v. Fulton, 987 F.2d 631, 634 (9th Cir.1993); United States v. Mejia, 953 F.2d 461, 464 (9th Cir.1991); United States v. Dixon, 952 F.2d 260, 262 (9th Cir.1991); United States v. Davis, 922 F.2d 1385, 1393 n. 8 (9th Cir.1991). The only exception to this rule is [w]here the district court indicates that it would have departed had it believed the legal authority to be present, the sentencing judge's refusal to depart on the basis that the Sentencing Guidelines precluded departure gives rise to a question of law that is reviewed de novo." Rose, 20 F.3d at 375 (citing United States v. Belden, 957 F.2d 671, 676 (9th Cir.1992)); United States v. Dickey, 924 F.2d 836, 839 (9th Cir.1991). Osborne concedes that the district court did in fact exercise discretion when it denied his motion for downward departure. Since the district court affirmatively exercised its discretion to deny the downward departure, there is no basis for appellate review. Accordingly, the appeal is dismissed in this regard.
 
 
 19
 AFFIRMED in part, REVERSED in part and REMANDED for further reconsideration of the quantity of drugs involved in the offense.
 
 
 
 [2]
 Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3